**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry M. Atkins, | No. CV-14-02706-PHX-NVW |
| Plaintiff, | |
| v. | **ORDER** |
| Calypso Systems, Inc., et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss First Amended Complaint (Doc. 37) and the parties' accompanying briefs.  For the reasons that follow, the Motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Barry Atkins is an Arizona resident.  Defendant Calypso Systems, Inc. ("Calypso") is a California corporation whose principal place of business is in California. Defendant Eden Kim is Calypso's founder and CEO, as well as a California resident.

Atkins's First Amended Complaint (Doc. 17) alleges the following.  In 2007, Kim emailed Calypso's financial information and sales forecasts to a third party in an attempt to raise capital.  (*Id.* at ¶¶ 16-17.)  That email was forwarded to Atkins.  (*Id.* at ¶ 18.) Kim then telephoned Atkins in Arizona and, knowing Atkins was an Arizona resident, emailed Atkins asking for a loan.  (*Id.* at ¶¶ 19-22.)  In the following weeks, Kim and Atkins exchanged drafts of a loan agreement via email.  (*Id.* at ¶¶ 23-24.)  Eventually

Kim signed and emailed to Atkins a final draft, entitled "Memorandum of Understanding," which Atkins signed. (*Id.* at ¶¶ 29-30, Ex. H.)

The agreement, by its terms, affirmed the parties' "inten[t] to enter into a series of agreements and transactions with the intent to provide for the corporate funding of Calypso." (*Id.* at Ex. H.)  Atkins's company, Adventure Ventures, LLC ("Adventure"), agreed to lend Calypso $125,000 at 6% annual interest, which Calypso agreed to repay by December 15, 2007.  (*Id.*)   The agreement also outlined subsequent tranches that Adventure would pay Calypso upon the parties' achievement of certain benchmarks, and it included two years of Calypso's revenue forecasts.  (*Id.*)   Adventure agreed to use "commercial efforts to raise additional capital to meet [Calypso's] ongoing requirements" and to exert its "best efforts to achieve the terms and intent of this [agreement] and subsequent agreements."  (*Id.*)  The agreement specified that Calypso was in California, that Adventure was in Arizona, and that the agreement itself "shall be governed under the laws of the state of California."  (*Id.*)

Calypso did not repay the loan by December 15, 2007.  (*Id.* at ¶ 41.)  Kim then assured Atkins the loan would be repaid and asked him to pay Calypso's outstanding rent of approximately $12,000.  (*Id.* at ¶¶ 41-42.)  Atkins agreed to do so.  (*Id.* at ¶ 43.)  Atkins then emailed Kim stating he had decided not to invest further in Calypso.  (*Id.* at ¶ 44.)  Kim made further promises that the loan would be repaid.  (*Id.* at ¶ 45.)  The parties then entered into a second agreement entitled "Bridge Loan Extension Agreement."  (*Id.* at ¶ 46, Ex. Q.)

The second agreement purported to be an "extension of term of," an "amendment" to, and "pursuant to the terms of" the previous agreement.  (*Id.* at Ex. Q.)  The parties agreed to extend the repayment deadline for all outstanding principal ($137,000) and interest to December 17, 2008, and to convert such principal and interest into shares of Calypso common stock.[1]  (*Id.*)

---

[1] Atkins interprets the agreement as meaning the outstanding principal and interest "*could be* converted to shares of common stock when Calypso completed an initial public offering."  (Doc. 17 at ¶ 47 (emphasis added).)  The Court need not now decide how to

Calypso did not repay the loan by December 17, 2008.  (*Id.* at ¶ 48.)  Throughout the ensuing years, Atkins regularly demanded repayment, maintained contact with Kim, and monitored Calypso's financial statements.  (*Id.* at ¶¶ 49, 54.)  Kim continually assured him that the loan would be repaid once Calypso's financial condition improved and that Calypso would make an initial public offering upon reaching certain financial benchmarks.  (*Id.* at ¶¶ 50-51.)  In reliance on these assurances, Atkins delayed bringing suit.  (*Id.* at ¶ 55.)  After a series of emails between Kim and Atkins in 2014, culminating in an August 29 email titled "Settlement Proposal," Atkins concluded Kim had been stringing him along with false promises in order to stall legal action.  (*Id.* at ¶¶ 56-65.)  Adventure then assigned to Atkins its rights in the loan and security interests with Calypso.  (*Id.* at ¶ 66.)  Atkins filed suit on December 17, 2014.  (Doc. 1.)

The Court dismissed Atkins's initial complaint for insufficient service of process.  (Doc. 16.)  Atkins then filed a First Amended Complaint alleging breach of contract, breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, unjust enrichment, and conversion.  (Doc. 17.)  Defendants move to dismiss for lack of personal jurisdiction, failure to state a claim within the governing statutes of limitations, and failure to plead fraud with sufficient particularity.  (Doc. 37.)

## II.    PERSONAL JURISDICTION

### A.    Legal Standard

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, [courts] only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Although the plaintiff cannot simply rest on the

interpret this provision.

bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations and alterations omitted).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because [Arizona's] long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-01 (citations omitted); *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995) ("Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution." (citations omitted)).

Personal jurisdiction can be either specific or general. "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation). This is in contrast to 'general' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (citations and alterations omitted).

**B.     General Jurisdiction**

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state.  This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (citations omitted).

Atkins has not shown general jurisdiction.  The First Amended Complaint alleges that Calypso is a California corporation and that Kim is a California citizen.  (Doc. 17 at

¶¶ 2-3.)   There is no allegation that Calypso has any offices in Arizona, that it sends employees to Arizona to transact business, or that it regularly enters into contracts with Arizona residents.   There is no allegation that Kim has ever been to Arizona or that he regularly transacts business with Arizona residents.   Plaintiff therefore has not shown "continuous and systematic" contacts between Defendants and Arizona that "approximate physical presence" in the state.

Atkins asks for an opportunity to conduct discovery in order to ascertain whether general jurisdiction exists.   But Defendants have challenged only the formal sufficiency of his jurisdictional allegations, not their veracity.   (Doc. 37 at 2-6.)   As a result, discovery would not aid Atkins.   *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1026 n.2 (9th Cir. 2001).   Therefore discovery on this matter will not be permitted.

## C.    Specific Jurisdiction

The Ninth Circuit employs "a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

(1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

The plaintiff has the burden of proving the first two prongs.   If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable."   *Picot v. Weston*, 780 F.3d 1206, 1211-12 (9th Cir. 2015) (citations omitted).

"The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue.   For claims sounding in contract, [courts] generally apply a 'purposeful

availment' analysis and ask whether a defendant has purposefully availed [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  For claims sounding in tort, [courts] instead apply a 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* at 1212 (citations and alterations omitted).

In either instance, the proper focus is on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citations omitted).  "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.  To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.  But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1122-23 (citations omitted).

### 1.    Contract Claims

Personal jurisdiction may be exercised over a defendant with respect to a contract claim only if the defendant "purposefully availed" himself of the privilege of conducting activities within the forum state.  *Picot*, 780 F.3d at 1212.  "Merely random, fortuitous, or attenuated contacts [with the forum state] are not sufficient.  A defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* (citations omitted).  Thus, a defendant's contract with an out-of-state party does not, by itself, automatically confer jurisdiction in that party's state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *see also Walden*, 134 S. Ct. at 1122-23.  On the other hand, jurisdiction is proper over defendants who "purposefully 'reached out beyond' their State into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 479-80).

Here, though it is a close call, personal jurisdiction over Kim and Calypso is proper with respect to Atkins's contract claims because Kim (acting on Calypso's behalf) purposefully reached out beyond California by entering a contractual relationship with an Arizona resident that envisioned continuing contacts in Arizona.   In reaching this conclusion, the Court considers the parties' "prior negotiations and contemplated future consequences," "the "terms of the contract," and "the parties' actual course of dealing." *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 479).

The parties' negotiations demonstrate that Kim and Calypso reached out to Arizona by knowingly soliciting an investment from an Arizona resident.   At first the solicitation was indirect: Kim emailed Calypso's financial information and sales forecasts to a third party, and that email was forwarded to Atkins.   (Doc. 17 at ¶¶ 17, 18, Ex. A.) Then the solicitation became direct: Kim telephoned Atkins in Arizona and, knowing Atkins resided in Arizona, emailed him asking for a loan.   (*Id*. at ¶¶ 19-20, 22, Ex. B.)[2] In the following weeks, Kim and Atkins exchanged drafts of a loan agreement via email. (*Id*. at ¶¶ 23-24, Ex. C, Ex. D.)   Kim then signed and emailed to Atkins a final draft, which Atkins signed.   (*Id*. at ¶¶ 29-30, Ex. G, Ex. H.)   After the initial repayment deadline passed, Kim again reached out to Atkins and asked him to pay Calypso's outstanding rent.   (*Id*. at ¶ 42.)   Atkins agreed, and the parties signed a second agreement setting out the terms of the second loan and extending the repayment deadline.   (*Id*. at ¶¶ 43, 46, Ex. Q.)   Kim thus affirmatively reached out to Arizona in the negotiations leading up to both agreements.   This reaching out indicates purposeful availment.   *Cf. Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) ("This circuit has held that a non-resident defendant's act of soliciting business in the forum state will generally be

---

[2] Kim declared in an affidavit: "I do not know where Mr. Atkins was during each of the telephone and email communications.  I understood that he lived at least some of the time in Arizona but that he had ties to other states and traveled as well."  (Doc. 37-1 at ¶ 5.)  To the extent these statements conflict with Atkins's allegation that Kim knew Atkins resided in Arizona, the Court resolves the conflict in Atkins's favor at this stage. *See Schwarzenegger*, 374 F.3d at 800 (9th Cir. 2004).

considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." (citations omitted)), *rev'd on other grounds sub nom. Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991).

Moreover, the terms of the parties' agreements demonstrate that Kim and Calypso envisioned continuing contacts in Arizona. The initial loan agreement specified that Atkins's company was in Arizona. (Doc. 17 at Ex. H.) The parties affirmed their "inten[t] to enter into a *series of agreements* and transactions with the intent to provide for the corporate funding of Calypso." (*Id.* (emphasis added)). To that end, the agreement outlined subsequent "tranches" of funds that Atkins would pay Calypso upon the parties' achievement of certain "benchmarks." (*Id.*) The agreement also set a loan repayment deadline, at which Atkins's initial investment would be repaid. (*Id.*) The agreement further included two years of Calypso's revenue forecasts. (*Id.*) Atkins agreed to use "commercial efforts to raise additional capital to meet [Calypso's] ongoing requirements" and would exert "best efforts to achieve the terms and intent of this [agreement] and subsequent agreements." (*Id.*) The parties' second loan agreement extended the initial repayment deadline and purported to convert Atkins's loans into Calypso stock. (*Id.* at Ex. Q.) Taken together, these contract terms show that Kim and Calypso intended to forge a continuing contractual relationship with an Arizona investor. This continuing relationship indicates purposeful availment. *See CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) ("In a breach of contract action, the purposeful availment requirement is satisfied if the defendant . . . has created continuing obligations to forum residents." (citation omitted)).

The parties' actual course of dealing alone neither justifies nor precludes a finding of personal jurisdiction. On one hand, there is no allegation that Kim or anyone from Calypso set foot in Arizona or reached out to anyone in Arizona other than Atkins. This lack of contact tends to militate against personal jurisdiction. On the other hand, Kim was in frequent contact with Atkins, as evidenced by the numerous emails from Kim to Atkins documented by the First Amended Complaint. (Doc. 17 at Exs. B, D, E, G, I, J,

K, L, M, N, R, S, T, V.)  Such frequent contact tends to support personal jurisdiction. Therefore, the parties' course of dealing is not a decisive factor.

Defendants' objections to personal jurisdiction are serious but ultimately unconvincing.  The most compelling objection stems from the Supreme Court's recent decision in *Walden*.  There, a government official seized cash from Nevada residents in a Georgia airport, who then sued him in federal court in Nevada.  *Walden*, 134 S. Ct. at 1119-20.  The Supreme Court deemed personal jurisdiction improper because the official's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."  *Id.* at 1125.  By the same token, Defendants argue, their actions in California did not create sufficient contacts with Arizona merely because they directed their conduct at a person whom they knew resided in Arizona.

But the facts here are different from those in *Walden*.  In *Walden*, the federal official "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."  *Id.* at 1124.  Here, although Kim never traveled to Arizona, he negotiated a loan agreement by calling an Arizona telephone and sending electronic documents to an Arizona computer.  Thus it cannot be said that Atkins is "the only link between the defendant[s] and the forum."  *Id.* at 1122.  Further, in *Walden*, the federal official engaged in only a single interaction with the plaintiffs before they sought legal recourse.  *See id.* at 1119.  Here, Kim interacted with Atkins over the course of several years before he sought legal recourse.  (Doc. 17 at ¶¶ 16-64.)  Therefore, the present facts more closely resemble those in *Burger King*, where the Supreme Court upheld jurisdiction over defendants who "purposefully reached out beyond their state and into another by . . . entering a contractual relationship that envisioned continuing and wide reaching contacts in the forum State."  *Walden*, 134 S. Ct. at 1122 (citing *Burger King*, 471 U.S. at 479-80).

Defendants next argue that the relevant contacts in this case are in California, not Arizona: Kim and Calypso are located in California; the parties agreed to a California

choice of law clause; the investment money was wired to California; the parties once met in California; etc.  But personal jurisdiction is not a zero-sum game.  The question is whether Arizona meets minimum constitutional requirements, not whether Arizona is the ideal forum for the lawsuit.

Defendants also cite three cases for the proposition that "a loan transaction with a resident of another state cannot create a basis for personal jurisdiction in that state." (Doc. 40 at 4.)  The first, *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977), had nothing to do with a loan.  *Id.* at 786.  Further, the portion of the opinion quoted by Defendants (Doc. 37 at 5-6) was overruled by subsequent Ninth Circuit decisions.  *See Chandler v. Roy*, 985 F. Supp. 1205, 1213 & n.9 (D. Ariz. 1997) (collecting cases).  The other two are district court cases whose facts are close to the present case but still distinguishable.  In one, the defendant argued it was the *plaintiff* who "reached out to him."  *See Holtra Const., LLC v. Takach*, No. 2:11CV555DAK, 2011 WL 5508822, at *2 (D. Utah Nov. 9, 2011).  Here, by contrast, Defendants reached out to Atkins.  In the other case, the court emphasized that the contracts at issue were "discrete encounters" without any ongoing obligations beyond repayment of debt.  *Ocean SW, Inc. v. Canam Pet Treats, Inc.*, No. 14-CV-2059-BAS(KSC), 2015 WL 2180492, at *10 (S.D. Cal. May 7, 2015).  Here, as explained above, the parties seemed to envision a longer-term investment relationship.

A Third Circuit case, *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217 (3d Cir. 1992), is instructive.  There, a Pennsylvania bank loaned money to out-of-state investors. *Id.* at 1219-20.  After default, the bank sued the investors in Pennsylvania.  *Id.* at 1220. The defendants had never dealt with the bank in Pennsylvania or traveled to Pennsylvania during the loan process, but rather had negotiated the loan with the bank's District of Columbia branch through a mortgage broker.  *Id.* at 1219.  The Third Circuit nonetheless found specific personal jurisdiction because the defendants knew they were dealing with a Pennsylvania company, negotiated and corresponded with that company, and had continuing obligations to repay the loan in Pennsylvania.  *Id.* at 1223.  The Third Circuit

determined that "by asking [the plaintiff] to lend money and offering to guaranty that debt, the defendants deliberately reached out beyond one state and created continuing relationships and obligations with citizens of another state." *Id.* (citation omitted); *see also Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Properties, Ltd.*, 226 Ariz. 262, 269-70, 246 P.3d 343, 350-51 (2011). So too here. Defendants "purposefully availed" themselves of the privilege of conducting activities within Arizona.

Defendants do not contest that Atkins's contract claims "arise[] out of or relate[] to [their] forum-related activities." *Picot*, 780 F.3d at 1211. Nor do they show that jurisdiction in Arizona would not "comport with fair play and substantial justice." *Id.* Accordingly, the Court has personal jurisdiction over Kim and Calypso with respect to Atkins's contract claims.

### 2. Tort Claims

Personal jurisdiction may be exercised over a defendant with respect to a tort claim only if the defendant "purposefully directed" his actions at the forum state. *Picot*, 780 F.3d at 1212. Purposeful direction occurs where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. In applying this test, [courts] must look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1214 (citations and alteration omitted).

Here, personal jurisdiction over Kim and Calypso is proper with respect to Atkins's tort claims because Kim (acting on Calypso's behalf) committed intentional acts targeted at a person whom he knew to be residing in Arizona.

An "intentional act" is simply an "act with the intent to perform an actual, physical act in the real world." *Id.* (citation omitted). Here, Kim committed an intentional act by, among other things, communicating with Atkins. *See id.*

"Express aiming" exists when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th

Cir. 2012). The exact form of analysis depends on the type of tort at issue. *Id.* Here, the alleged fraud, negligent misrepresentation, conversion, and unjust enrichment were expressly aimed at Arizona because they arose from communications and other conduct directed toward someone whom Kim knew to be residing in Arizona. (Doc. 17 at ¶¶ 20, 22, 29, 30-31, 41, 45-46, 48, 50-51, 65, 84, 95, 102, 111, Ex. H, Ex. Q.) *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1110, 1112 (9th Cir. 2002).

A defendant can cause "harm" in multiple forums. *Dole Food*, 303 F.3d at 1113. Kim harmed someone he knew to be an Arizona resident. (Doc. 17 at ¶¶ 20, 92, 100, 108, 114.) Therefore Kim caused harm that he knew was likely to be suffered in Arizona. *See Washington Shoe*, 704 F.3d at 679.

Defendants point out that a "mere injury to a forum resident is not a sufficient connection to the forum." *Picot*, 780 F.3d at 1214 (quoting *Walden*, 134 S. Ct. at 1125)). This is true, but Atkins alleges more than "mere injury." He alleges injury arising from communications knowingly made to a person presently residing in Arizona. Such allegations are a far cry from *Picot*, where a California plaintiff claimed injury on the grounds that a Michigan resident's statements to an Ohio resident caused a Delaware corporation to cease payments in Wyoming and Australia. *Id.* at 1215. Similarly inapposite is *Walden*, where a Nevada plaintiff claimed injury from the actions of a Georgia resident who never "traveled to, conducted activities within, contacted anyone in, or sent anyone or anything to Nevada." 134 S. Ct. at 1124. By contrast, Kim intentionally called and emailed a person in Arizona, and those communications caused injury.

Defendants do not contest that Atkins's tort claims "arise[] out of or relate[] to [their] forum-related activities." *Picot*, 780 F.3d at 1211. Nor do they show that jurisdiction in Arizona would not "comport with fair play and substantial justice." *Id.* Accordingly, the Court has personal jurisdiction over Kim and Calypso with respect to Atkins's tort claims.

III.   STATUTE OF LIMITATIONS

A.   Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, a court may consider evidence on which the complaint necessarily relies if (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy of the document submitted to the court. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Defendants argue California's statute of limitations bars Atkins's claims because the parties previously agreed California law would govern. Atkins contends California law does not govern and, in any event, more facts are required before dismissal on limitations grounds.

The Court evaluates this "intertwined issue of statute of limitations and choice of law questions" under the following analytical framework: "First, the Court must decide what choice-of-law rule governs the selection of the statute of limitations. Second, the Court must apply that rule to determine which jurisdiction's limitations law applies. Third, and finally, the Court [must] determine whether [Atkins's] claims fall within the

relevant limitations period." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996-97 (9th Cir. 2006) (citations omitted) (first alteration in original).

### B.      Choice of Law Rule

"A federal court sitting in diversity must apply the forum state's choice of law rules." *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Arizona looks to the Restatement (Second) of Conflict of Laws (1971) ("Restatement") when analyzing conflict of laws problems. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 500, 917 P.2d 222, 229 (1996). Therefore the Court will follow the Restatement, as interpreted by Arizona courts, in deciding which statute of limitations applies.

### C.      Applicable Statute of Limitations

Arizona courts evaluate contractual choice of law provisions under Restatement § 187. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266, 77 P.3d 439, 441 (2003). Absent such provisions, Arizona courts decide between competing statutes of limitations by applying Restatement § 142 as revised in 1988. *Jackson v. Chandler*, 204 Ariz. 135, 136, 61 P.3d 17, 18 (2003). Arizona courts have not addressed whether § 187 or § 142 governs intermediate cases such as this one, which involve both a contractual choice of law provision and competing statutes of limitations. Other courts, however, evaluate the contractual provision under § 187 as a way of settling the more general statute of limitations dispute under § 142. *See, e.g.*, *In re Sterba*, 516 B.R. 579, 583 (B.A.P. 9th Cir. 2014).

#### 1.      Contract Claims

Restatement § 187 sets out the conditions under which a contractual choice of law provision applies to parties' disputes. Section 187(1) states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

A contractual choice of law provision ordinarily governs only contract claims, not tort claims.  *See Winsor v. Glasswerks, PHX, L.L.C.*, 204 Ariz. 303, 306-07, 63 P.3d 1040, 1043-44 (Ct. App. 2003).  Therefore, California's statute of limitations applies to Atkins's contract-based claims if (i) the parties chose California law to govern their contractual rights and duties and (ii) the parties could have explicitly agreed to apply California's statute of limitations.  *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207-08, 841 P.2d 198, 202-03 (1992).  Here, both conditions are met.

First, the parties chose California law to govern their contractual rights and duties by including a provision in their initial agreement: "This [agreement] shall be governed under the laws of the state of California."  (Doc. 17 at Ex. H.)  Atkins argues that, because this choice of law provision is not in the parties' *subsequent* agreement, breaches of the subsequent agreement are not governed by California law.  But the subsequent agreement did not address, much less alter, the parties' original choice of law.  Quite the contrary, the subsequent agreement by its own terms purported to be an "extension of term of," an "amendment" to, and "pursuant to the terms of" the initial agreement.  (Doc. 17 at Ex. Q.)  Therefore the parties chose California law to govern both agreements.

Second, the parties could have explicitly agreed to apply California's statute of limitations.  California law allows such an agreement, of course.  Arizona law generally does also.  *See Zuckerman v. Transamerica Ins. Co*, 133 Ariz. 139, 143, 650 P.2d 441, 445 n.5 (Ariz. 1982).  Atkins does not dispute that the parties could have explicitly so agreed.[3]

---

[3] Indeed, some courts interpret a general choice-of-law provision as meaning the parties *did* agree to apply the chosen state's statute of limitations.  *See Wang Labs, Inc. v Kagan*, 990 F.2d 1126, 1129 (9th Cir. 1993) ("The parties' contractual choice of law requires that [the chosen state's] statute of limitations applies."); *accord In re Western United Nurseries, Inc.*, 2000 WL 34446155, at *8 (D. Ariz. July 3, 2000) ("[S]ection 187 of the Restatement requires that a valid, general choice-of-law clause be deemed to include the statutes of limitations of the chosen state." (footnote omitted)), *partially vacated on rehr'g on other grounds*, 2000 WL 34448963.  But some courts take the opposite view.  *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992) ("Choice of law provisions in contracts do not apply to statutes of limitations, unless the reference

Therefore, the parties' contractual choice of law operates to apply California's statute of limitations to Atkins's contract-based claims.  Such claims include breach of contract as well as breach of covenant of good faith and fair dealing.  *See Rawlings v. Apodaca*, 151 Ariz. 149, 163, 726 P.2d 565, 579 (1986) ("The breach of contractual covenants ordinarily sounds in contract.").

### 2.  Tort Claims

For claims not covered by a contractual choice of law, Arizona courts apply the statute of limitations prescribed by Restatement § 142 as revised in 1988.  *Jackson v. Chandler*, 204 Ariz. 135, 136, 61 P.3d 17, 18 (2003).  That section states that in general:

> (1) The forum will apply its own statute of limitations barring the claim.

Arizona's statute of limitations applies to Atkins's claims for unjust enrichment and conversion because it would bar them, absent equitable estoppel considerations.  Unjust enrichment must be claimed within three or four years.  *See Costanzo v. Stewart*, 9 Ariz. App. 430, 433, 453 P.2d 526, 529 (1969) (citing A.R.S. § 12-543) (three years); *San Manuel Copper Corp. v. Redmond*, 8 Ariz. App. 214, 218, 445 P.2d 162, 166 (1968) (citing A.R.S. § 12-550) (four years).  Conversion must be claimed within two years.  *Walker v. Walker*, 18 Ariz. App. 113, 114-15, 500 P.2d 898, 899-900 (1972) (citing A.R.S. § 12-542(5)).  These claims accrue when the claimant knows or reasonably should know of the resulting injury.  *See Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995).  Here, Atkins should have known of the underlying injury for unjust enrichment and conversion on December 17, 2008, the day Defendants failed to meet their extended contractual repayment deadline.  (Doc. 17 at ¶¶ 46, 48, Ex. Q.)  Atkins filed his initial Complaint six years later, on December 17, 2014.  (Doc. 1.)  Therefore, Arizona's statute of limitations applies to the unjust enrichment and conversion claims because it would ordinarily bar them.

---

is express." (citation omitted)); *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981) ("Such clauses generally do not contemplate application to statutes of limitations.").

Similarly, Arizona's statute of limitations *partially* applies to Atkins's claims for fraud and negligent misrepresentation.  Fraud must be claimed within three years.  *See Mister Donut of Am., Inc. v. Harris*, 150 Ariz. 321, 323, 723 P.2d 670, 672 (1986) (citing A.R.S. § 12-543).  Negligent misrepresentation must be claimed within two years. *Hullett v. Cousin*, 204 Ariz. 292, 297, 63 P.3d 1029, 1034 (2003) (citing A.R.S. § 12-542).  These claims accrue when the claimant knows or reasonably should know of the resulting injury.  *Gust*, 182 Ariz. at 588, 898 P.2d at 966.  Within these claims, however, Atkins complains of three separate wrongs: (1) Defendants' false promises to repay before the December 17, 2008 deadline, (2) Defendants' subsequent false promises to repay, and (3) Defendants' false promises to make an initial public offering.  (Doc. 17 at ¶¶ 46, 50, 51.)  As stated above, Atkins should have known of injury resulting from a promise to repay before the December 17, 2008 deadline once the deadline passed.  (Doc. 17 at ¶¶ 46, 48, Ex. Q.)  But it is not clear when Atkins should have known of injury resulting from subsequent promises to repay or promises to make an initial public offering because the pleadings disclose no deadlines accompanying those promises.  Therefore, Arizona's statute of limitations applies to the fraud and negligent misrepresentation claims to the extent they arise from Defendants' promises to repay before December 17, 2008.   To the extent those claims arise from Defendants' subsequent promises to repay or promises to make an initial public offering, however, it is not clear which statute of limitations applies because it is not yet clear when the statute began to run.

### D.    Application of Statute of Limitations

As explained above, California's statute of limitations applies to Atkins's contract claims.  Breach of written contract must be claimed within four years.  Cal. Civ. Proc. Code § 337(1).  Breach of covenant of good faith and fair dealing must also be claimed within four years when the covenant is related to a written contract.  *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220-21, 285 Cal. Rptr. 717, 726-27 (Ct. App. 1991).  These claims accrue when the claimant discovers or reasonably should

discover the injury and its cause.  *See Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 119, 51 Cal. Rptr. 2d 594, 597 (1996).  Here, Atkins should have known of the injury and its cause on December 17, 2008, the day Defendants failed to meet their extended contractual repayment deadline.  (Doc. 17 at ¶¶ 46, 48, Ex. Q.)  Atkins filed his initial Complaint six years later, on December 17, 2014.  (Doc. 1.)  Therefore, California's statute of limitations would bar Atkins's claims for breach of contract and breach of covenant of good faith and fair dealing, absent equitable estoppel considerations.

As explained above, Arizona's statute of limitations applies to Atkins's unjust enrichment and conversion claims, as well as his fraud and negligent misrepresentation claims to the extent they arise from Defendants' promises to repay before December 17, 2008.  These claims would also be barred, absent equitable estoppel considerations.

## E.    Equitable Estoppel

Atkins argues Defendants should be estopped from asserting a statute of limitations defense because they caused him to delay bringing suit in the first place.[4]  According to the First Amended Complaint, after the contractual repayment deadlines lapsed Atkins maintained contact with Kim, monitored Calypso's financial statements, and regularly demanded repayment.  (Doc. 17 at ¶¶ 49, 54.)  Throughout the ensuing years, Kim continually assured Atkins that the loan would be repaid once Calypso's financial condition improved and that Calypso would make an initial public offering upon reaching certain financial benchmarks.  (*Id.* at ¶¶ 50-51.)  In reliance on these assurances, Atkins delayed bringing suit.  (*Id.* at ¶ 55.)  Further, according to the Proposed Second Amended Complaint, Kim made these assurances with the intent to cause Atkins to delay suit, and Atkins's reliance was in part based on Kim's assurances that he would reap substantial financial rewards.  (Doc. 39-1 at ¶¶ 62-63, 66, 68, 113-14.)

---

[4] Atkins actually requests "equitable tolling."  (Doc. 39 at 15-16.)  That is not the same as equitable estoppel. *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383-84, 73 P.3d 517, 532-33 (2003), *as modified* (Aug. 27, 2003) (explaining the difference).  But the substance of his argument indicates a call for equitable estoppel.

1      **1.      Contract Claims**

2          Under California law, "one cannot justly or equitably lull his adversary into a false

3    sense of security, and thereby cause his adversary to subject his claim to the bar of the

4    statute of limitations, and then be permitted to plead the very delay caused by his course

5    of conduct as a defense to the action when brought. . . . Generally speaking, four

6    elements must be present in order to apply the doctrine of equitable estoppel:  (1) the

7    [defendants] must be apprised of the facts; (2) [the defendants] must intend that [their]

8    conduct shall be acted upon, or must so act that [the plaintiff] had a right to believe it was

9    so intended; (3) the [plaintiff] must be ignorant of the true state of facts; and (4) [the

10   plaintiff] must rely upon the conduct to his injury.  The detrimental reliance must be

11   reasonable.  The defendant's statement or conduct must amount to a misrepresentation

12   bearing on the *necessity* of bringing a timely suit."  *May v. City of Milpitas*, 217 Cal.

13   App. 4th 1307, 1337-38, 159 Cal. Rptr. 3d 310, 330-31 (2013) (citations omitted).  When

14   estoppel is invoked against a motion to dismiss, the court determines whether the plaintiff

15   has alleged facts constituting estoppel; it does not make factual findings.  *Ard v. Cnty. of*

16   *Contra Costa*, 93 Cal. App. 4th 339, 347-48, 112 Cal. Rptr. 2d 886, 892 (2001).

17         Here, Atkins's alleged reliance on Kim's frequent false promises of repayment and

18   financial reward suffices to estop Defendants from dismissing his contract claims under

19   California's statutes of limitations.  *See, e.g.*, *Carruth v. Fritch*, 36 Cal. 2d 426, 434, 224

20   P.2d 702, 706-07 (1950) (reversing demurrer where plaintiff delayed suit because

21   defendant fraudulently induced her to believe she would be fully compensated); *accord*

22   *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 44, 21 Cal. Rptr. 2d 110, 116 (1993), *as modified*

23   (July 13, 1993) (holding jury could find estoppel where plaintiffs delayed suit in reliance

24   on defendants' promises to repair property damage).

25         **2.      Tort Claims**

26         Under Arizona law, a plaintiff invoking equitable estoppel must establish that (1)

27   the defendant made specific promises or inducements that prevented the plaintiff from

28   filing suit, (2) those promises or inducements actually induced the plaintiff to forbear

filing suit, (3) the defendant's conduct reasonably caused the plaintiff to forbear filing a timely action, and (4) the plaintiff filed suit within a reasonable time after termination of the conduct warranting estoppel.  *Nolde v. Frankie*, 192 Ariz. 276, 280, 964 P.2d 477, 482 (1998).  When estoppel is invoked against a motion to dismiss, the court determines whether the plaintiff has alleged facts constituting estoppel.  *See Waugh v. Lennard*, 69 Ariz. 214, 228, 211 P.2d 806, 815 (1949).

Arizona courts have not decided whether a plaintiff's alleged reliance on a defendant's frequent false promises of repayment and financial reward suffices to invoke equitable estoppel.  Roughly analogous cases suggest receptiveness to estoppel in such situations.  *See, e.g.*, *Roer v. Buckeye Irr. Co.*, 167 Ariz. 545, 547, 809 P.2d 970, 972 (Ct. App. 1990) ("A defendant will be estopped from asserting the defense of the statute of limitations if by its conduct the defendant induces the plaintiff to forego [sic] litigation by leading plaintiff to believe a settlement or adjustment of the claim will be effected . . . ." (citation omitted)); *Kelley v. Robison*, 121 Ariz. 229, 230, 589 P.2d 472, 473 (Ct. App. 1978) (finding estoppel possible where defendant insurer paid plaintiff's property damage and medical bills and promised to pay chiropractor).

Two general considerations also favor estoppel here.  First, Arizona courts "disfavor statute of limitations defenses, preferring instead to resolve litigation on the merits when possible."  *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, 181 P.3d 219, 225 (Ct. App. 2008) (citations omitted).  Second, discovery would be helpful because the applicability of estoppel based on a defendant's promises "rests largely on the facts and circumstances of each case. . . . Most cases appear to turn simply on whether, under all the facts and circumstances of the case, the plaintiff was justified in relying upon the promises of the defendant, which in turn depends on the credibility of the defendant under the circumstances and the reasonableness of the reliance."  Allan E. Korpela, Annotation, *Promises to Settle or Perform as Estopping Reliance on Statute of Limitations*, 44 A.L.R.3d 482 § 2[a] (1972) (citations omitted).  Therefore, though it is a

1   close question, Atkins's allegations of estoppel suffice at this stage of litigation to avoid

2   dismissal of his tort claims under Arizona's statutes of limitations.

3

4   **IV.   SUFFICIENCY OF PLEADING FRAUD**

5       **A.   Legal Standard**

6       A party in federal court alleging fraud "must state with particularity the

7   circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This rule applies irrespective of

8   the source of subject matter jurisdiction and irrespective of whether the substantive law at

9   issue is state or federal.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir.

10  2003).  A motion to dismiss for failure to comply with the rule can be framed as a

11  12(b)(6) motion or a 9(b) motion.  *Id.* at 1107-08.

12      "Rule 9(b) demands that, when averments of fraud are made, the circumstances

13  alleging fraud be specific enough to give defendants notice of the particular misconduct

14  so that they can defend against the charge and not just deny that they have done anything

15  wrong.  Averments of fraud must be accompanied by the 'who, what, when, where, and

16  how' of the misconduct charged.  A plaintiff must set forth more than the neutral facts

17  necessary to identify the transaction.  The plaintiff must set forth what is false or

18  misleading about a statement, and why it is false."  *Id.* at 1106 (citations, alterations, and

19  emphasis omitted).

20      **B.   Application**

21      Although the First Amended Complaint specifies "who" committed fraud, it does

22  not adequately set forth the "what, when, where, and how."  The First Amended

23  Complaint alleges Kim frequently reassured Atkins that (1) his loan would be repaid once

24  "the financial condition of Calypso improved sufficiently," and (2) Calypso would make

25  an initial public offering "once certain financial benchmarks were reached."  (*See* Doc.

26  17 at ¶¶ 41, 45, 50-51, 65, 84-85.)  It does not state precisely what Kim said, including

27  what "financial condition" would prompt repayment or which "financial benchmarks"

28  would trigger an initial public offering.  (Perhaps Kim himself did not specify; if so, the

complaint should say so.)  It does not state the dates of Kim's assurances, except that they occurred "throughout the ensuing years" after the lapsing of the contractual deadlines. (*Id.* at ¶¶ 50-51.)  It does not state where Atkins or Kim was when these assurances were made.  And for the most part it does not state how these assurances were made—whether verbally or in writing, in a professional or casual context, with a high or low level of confidence, etc.

The Proposed Second Amended Complaint takes two steps forward, one step back.  It adds that Kim (1) provided Atkins "regular updates" on Calypso's business progress and efforts to make an initial public offering, (2) reassured Atkins he would reap "substantial financial rewards" after the initial public offering, and (3) misled Atkins as to Calypso's "financial situation," "business prospects," and "progress toward an initial public offering."  (Doc. 39-1 at ¶¶ 59, 62, 100-111.)  But new questions arise:  What exactly did Kim say about Calypso's "financial situation," "business prospects," or "progress toward an initial public offering," and in what ways were these statements false or misleading?  Moreover, previous questions remain:  What "financial condition" did Kim say would prompt repayment, and which "financial benchmarks" did Kim say would trigger an initial public offering?  To its credit, the Proposed Second Amended Complaint fills in a bit of context.  It specifies Kim communicated with Atkins "at regular intervals from 2008 to 2014" and "via telephone and email."  (*Id.* at ¶ 100.)  But the reader still wonders exactly when, where, and in what circumstances the statements were made.

These omissions matter.  Without knowing the specific content and context of the alleged fraudulent statements, Defendants cannot easily raise particular defenses against Atkins's allegations and might therefore suffer undeserved reputational harm.  *See Vess*, 317 F.3d at 1104.  Accordingly, the Ninth Circuit has taken a strict view of Rule 9(b)'s particularity requirement.  *See, e.g.*, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (fraud allegations that "do not identify when" the statements were made "fall short" of Rule 9(b)), *cert. denied*, 134 S. Ct. 1322 (2014).  Therefore Atkins's fraud claim fails to satisfy Rule 9(b)'s requirement.

## V.    LEAVE TO AMEND

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir 2004).  "Futility alone can justify the denial of a motion to amend."  *Id.*

Because Atkins has already amended his complaint once, the Court previously ordered (Doc. 38) that he file a proposed further amended complaint containing any allegations that might cure Rule 12(b)(6) deficiencies.  Pursuant to that order, the Court considers only the allegations in the Proposed Second Amended Complaint (Doc. 39-1) in deciding whether to grant further leave to amend.

The Proposed Second Amended Complaint includes several new allegations regarding the alleged fraud.  (Doc. 39-1 at ¶¶ 58-59, 62, 73-74, 100-111.)  As explained above, however, these new allegations still do not satisfy Rule 9(b) because they leave open, and indeed raise, crucial questions as to the content and context of the allegedly fraudulent statements.  Further leave to amend would be futile, given Atkins's concession in oral argument that, without discovery, he can add nothing to the fraud allegations beyond what is already in the Proposed Second Amended Complaint.  Therefore no further leave to amend will be granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss First Amended Complaint (Doc. 37) is granted to the extent Plaintiff's claim for fraud fails to satisfy the pleading requirements under Federal Rule of Civil Procedure 9(b).  Plaintiff's claim for fraud is dismissed with prejudice.  The Motion is otherwise denied.

Dated this 8th day of October, 2015.

_____
Neil V. Wake
United States District Judge