**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry M Atkins, | No. CV-14-02706-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Calypso Systems Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendant's Motion for Recovery of Attorneys' Fees and Costs (Docs. 82, 85), Plaintiff's Responses (Docs. 90, 91), and Defendant's Reply (Doc. 96). The Court grants the motion in part and will award fees against Plaintiff. The Court denies the motion for fees and sanctions against Plaintiff's counsel.

**I.     FACTUAL BACKGROUND**

On November 16, 2016, this Court granted summary judgment for defendants Calypso Systems Incorporated and Eden Kim ("Calypso") in an action filed by plaintiff Barry Atkins. (Doc. 80.) That action alleged various contract and tort claims stemming from a 2008 conversion agreement between the two parties. The facts are discussed at length in that order. The following summary recaps those findings pertinent to the present motion.

The saga began in 2007 when Atkins, a long-time financial investor, provided a bridge financing loan to Calypso, a Silicon Valley startup. (Technically speaking, the

loan was furnished by "Adventure Ventures," a corporation owned and operated by Atkins and his wife. Atkins acted as an agent of Adventure during all times relevant to this case, and all of Adventure's interests in Calypso were transferred to Atkins personally prior to this action.) The initial loan was for $125,000. Upon Calypso's request Atkins increased it to $137,000 as of January 2008.

In 2008, amid talks to merge with another company, Calypso reached out to all its investors and asked them to convert their outstanding debt interests into stock, essentially discharging Calypso from its debts to them in exchange for ownership shares in the company. Atkins was one such investor. During 2008, Atkins and Calypso exchanged and signed documents that, by their express terms, converted Atkins's loan debt into Calypso stock. A number of subsequent written communications between the two reflected that both parties believed this mutually. In 2014, however, Atkins demanded Calypso repay its loans after its merger efforts fell through. When Calypso refused because of the debt-to-stock conversion, Atkins filed this action alleging breach of contract and the torts of fraud, negligent misrepresentation, conversion, and unjust enrichment.

In his complaint and subsequent affidavits, Atkins purported that Eden Kim, Calypso's founder and CEO, made a number of oral assurances to the effect that the conversion would not be final until the company actually merged and that Atkins's debt would eventually be repaid. Atkins maintained over the course of litigation that no one from Calypso ever told him they believed the debt had converted to stock. He further maintained that Kim "lulled" him into letting various statutes of limitation pass by repeatedly assuring him a merger was imminent. However, as discovery progressed, more and more evidence emerged that Atkins knew (and, until 2014, did not contest that) his loan debt had converted to Calypso stock pursuant to a contract he himself signed. In June of 2016, after moving for summary judgment but before submitting its brief in reply to Atkins's response, Calypso learned from a third party that Atkins had also been deposed in a separate 2009 proceeding but had not turned over the deposition transcript in

the course of discovery. The deposition transcript showed Atkins admitting point blank that as of 2009, Calypso had in fact communicated to him their position that the loan debt had converted into stock.

Calypso filed a motion to dismiss on March 2, 2015, which this Court granted in part and denied in part. The Court dismissed Atkins's claim of fraud, which was insufficiently pled pursuant to Federal Rule of Civil Procedure 9(b). The Court permitted the rest of his claims to move forward on the facts alleged. After several of the discovery revelations described above, Calypso filed a motion for summary judgment on May 3, 2016. This Court granted that motion in full.

## II. ATTORNEYS' FEES AGAINST ATKINS

### A. Legal Standards

The default rule for an action seeking attorneys' fees is the so-called "American Rule": regardless of the outcome, litigants pay their own fees unless a statute or contract specifies otherwise. *Marx v. General Revenue Corp.*, — U.S. —, 133 S. Ct. 1166, 1175 (2013). However, it is well-accepted that "federal courts have inherent power to award attorney's fees in a narrow set of circumstances, including when a party brings an action in bad faith." *Id.*

In addition, Arizona provides a statutory basis for courts to assess attorneys' fees against a party "[i]n any contested action arising out of a contract, express or implied . . . ." Ariz. Rev. Stat. § 12-341.01(A). An action arises out of a contract "when the duty breached is 'created by the contractual relationship, and would not exist but for the contract.'" *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 220, 273 P.3d 668, 672 (Ariz. Ct. App. 2012) (quoting *Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987)) (internal quotation marks omitted). *See also ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 192, 673 P.2d 934, 936 (Ariz. Ct. App. 1983) ("[A]s used in A.R.S. § 12-341.01, the words 'arising out of a contract' describe an action in which a contract was a factor causing the dispute.").

### B. Analysis

Beyond the Court's inherent sanctioning power, the parties were instructed to address in their briefing whether section 12-341.01 calls for attorneys' fees to be assessed against Atkins for both his breach of contract claims and his tort claims. (Doc. 88.) Calypso argues the statute does apply, but that the Court can and should award fees under its inherent power either way. (Doc. 96 at 2.) As Atkins correctly points out, this Court previously determined that he and Calypso chose California law to govern the contract out of which this dispute arose. (Doc. 43 at 15.) As a result, Atkins argues section 12-341.01 is inapplicable to his contract claims and does not justify an award for his tort claims. (Doc. 91 at 5.) He does not contest the Court's inherent power to assess fees generally but does insist fees are not warranted in his case.

#### 1. Contract Claims

The applicability of section 12-341.01 to Atkins's contract claims is somewhat murky given the parties' contractual California choice-of-law provision. But the issue need not be decided here, because this Court also has the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted). Among the circumstances in which this applies, a court may grant fees where it finds "that fraud has been practiced upon it." *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

Harnessing all restraint, this case still warrants an exercise of the Court's inherent power to assess attorneys' fees. Underpinning this whole action were Atkins's allegations that Calypso had repeatedly assured him they would repay his loan despite having neither merged nor gone public, their signed loan conversion documents notwithstanding. According to Atkins's declarations, he had no idea prior to 2014 that Calypso believed his loan debt had converted to stock. A claim based on those allegations, though improbable in the extreme, would not necessarily be frivolous or fraudulent. The case accordingly went to discovery. As discussed in the summary

judgment order, discovery revealed that even these allegations were false—and that Atkins knew they were false from the outset. The record shows that someone from Calypso emailed Atkins in August of 2008 asking him whether his Calypso stock certificates should be in his own name or in the name of his corporation. (Doc. 71, ¶ 16; Doc. 74, ¶ 16.) Rather than expressing confusion, as would be expected of someone denying he had converted his debt to stock, Atkins simply replied that his stock should be in the name of his corporation. (*Id.*) When deposed for this case, Atkins first tried to deny this email exchange ever happened—but then conceded it did when confronted with copies of the emails by opposing counsel. (Doc. 77-1 at 34-36.)

In addition, Atkins testified in an unrelated 2009 deposition that during a then-recent conversation with Calypso, Calypso had squarely told him "they were under the impression that they had converted [the bridge loan debt] into stock." (Doc. 75 at 24.) Despite receiving pertinent discovery requests, Atkins did not inform Calypso of this testimony until Calypso obtained it through a third party and brought it to his attention. Whatever credit might be due to him for promptly responding with a copy of the transcript (Doc. 90 at 10-11) is far outweighed by the duplicity of his Amended Declaration (Doc. 75), filed shortly after the dust-up. Seemingly unconcerned about his sworn statement to the contrary coming to light, Atkins doubled down on previous assertions that Eden Kim "never told me prior to the middle of 2014 that he considered Adventure's debt of $137,000 plus interest to have been permanently converted into Calypso's stock," that during a 2014 phone call "Kim had told me for the very first time, that Adventure's loan had been converted to Calypso's stock," and that Kim "misled me by concealing from me his opinion that he considered Adventure's loan to have been converted into Calypso stock." (Doc. 75, ¶¶ 80, 83, 95.) Atkins did add several items to his affidavit in light of the 2009 deposition, but none of them so much as attempted to explain his contradictory testimony. (Doc. 75, ¶¶ 110-23.)

The Court is nonplussed but not fooled. Calypso caught Atkins lying about the central issue giving rise to his claims. It is not fraud to bring a legal action, however

1 weak, in good faith. But where Atkins's own sworn testimony reveals he knew his
2 factual assertions to be a lie, it is clear Atkins pursued the action fraudulently. The Court
3 would be in dereliction of its duty to ensure justice if it did not use its inherent powers to
4 assess fees against Atkins.

### 2. Tort Claims

The above analysis regarding the Court's inherent power to assess fees applies to Atkins's contract and tort claims alike. Fees can and will be awarded for both.

On top of this, regardless of whether the parties' contractual choice-of-law provision insulates Atkins's contract claims from section 12-341.01, the Court previously ruled that Atkins's tort claims are governed by Arizona law. (Doc. 80 at 15.) Section 12-341.01 pertains to "any contested action arising out of a contract" in Arizona. Ariz. Rev. Stat. § 12-341.01(A). To the extent Atkins's tort claims "aris[e] out of a contract," Calypso may therefore be entitled to attorneys' fees for work defending those claims.

### a. All Atkins's Tort Claims Arose from the Contract.

In his First Amended Complaint, Atkins alleged the torts of fraud, negligent misrepresentation, unjust enrichment, and conversion. His theories for each of these are mostly vague and general, failing to connect legal theories to facts. The essential allegation appears to be that Calypso breached its contract to repay his loan, and in doing so unlawfully obtained possession of the funds on loan (conversion), made false and misleading statements about repaying him (fraud and negligent misrepresentation), all the while turning a profit off their ill-gotten gains (unjust enrichment). *See* Doc. 17, ¶¶ 67-115. All of these alleged torts arose out of the parties' contract, which served as the predicate for each one.

Atkins does not dispute that either the fraud or negligent misrepresentation claims arose out of the contract but offers separate arguments disputing the other two. He first contends that unjust enrichment "is an equitable cause of action that is asserted in the alternative if the Court finds that there was no contract," but that since there was a contract here, "unjust enrichment has no further application." (Doc. 91 at 8.) Yet the

- 6 -

apparent theory behind his unjust enrichment claim was that Calypso pocketed a loan it had a contractual obligation to repay. *See* Doc. 17, ¶ 102 ("Defendants have been enriched by retaining amounts which belong to Atkins."). By his upside-down logic, section 12-341.01 would exclude fees incurred defending any alternative theory in a breach of contract action, no matter how frivolous, so long as that theory was predicated on the non-existence of a contract—the very thing making it a "breach of contract" action at all. This is patently incorrect. If anything, Atkins's unjust enrichment claim was made even more frivolous by the overwhelming evidence that a contract in fact existed.

Atkins next argues Calypso cannot seek fees for his conversion claim because "the underlying loan to Calypso merely placed Atkins and Defendants within 'tortious striking distance' of one another," and that, based on their relationship, Calypso owed Atkins a duty "not to convert the proceeds of the loan or, alternatively, the shares that [he] then owned in Calypso." (Doc. 91 at 9.) This essentially admits Calypso's very claim: the parties' "relationship" was that of parties to a loan contract. Calypso's duty would not have existed but for that contract. *See Assyia*, 229 Ariz. at 220, 273 P.3d at 672.

The Court finds that all of Atkins's meritless and fraudulent tort claims arose out of his contract with Calypso.

### b. Fees Should Be Awarded for All Tort Claims.

When deciding whether to award fees under section 12-341.01, a court should consider (1) "[t]he merits of the claim or defense presented by the unsuccessful party"; (2) whether "[t]he litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result"; (3) whether "[a]ssessing fees against the unsuccessful party would cause an extreme hardship"; (4) whether "[t]he successful party . . . prevail[ed] with respect to all of the relief sought"; (5) "the novelty of the legal question presented, and whether such a claim or defense had previously been adjudicated in this jurisdiction"; and (6) "whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of

- 7 -

attorney's fees." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

Applying these factors, fees against Atkins are more than warranted in this case. Not a single claim Atkins brought had any merit. The entire action could (and should) have been avoided by not grounding it on fraud and perjury. While Atkins contends an award would cause hardship, he has produced no evidence to back this up. The only novelty of Atkins's claims was the novelty of fraudulent factual assertions within his knowledge to be false. He had no case at all under the true facts of his case, and he especially had no colorable tort claims under any of the theories he proposed. Because of the nature of his case, assessing fees against him would not deter claims worthy of resolution, including claims that fail in the end.

Each of Atkins's arguments to the contrary is unpersuasive. First, he argues his claims were meritorious, asserting that his claims "were supported by documentary and other e-mail communications, and did not rest . . . upon mere speculations," adding that had the case proceeded, his claims "were susceptible of proof at trial and, thus, meritorious." (*Id.*) Ironically, "documentary and other e-mail communications" are precisely the evidence of Atkins's fraud on the court. All the operative documents over several years confirmed the conversion of debt to stock, and it was only Atkins's assertions in defiance of the transaction documents that got this case past dismissal on the pleadings. The Court has thoroughly explained why Atkins's claims are without merit. *See* Doc. 80. Those explanations still stand here.

Second, Atkins argues that litigation could not have been avoided or the case settled because, "on several occasions, [he] attempted to avoid the instant litigation with Defendants and to obtain from them some payments," lamenting that "Defendants failed and refused to pay reasonable sums greater than nuisance value, leaving Atkins with no choice except to initiate litigation." (Doc. 91 at 11.) To call this "tone deaf" would be an understatement. Litigation could have been avoided by not bringing it in the first place, or by dropping it, sham affidavits and all, especially after the fraud was conclusively

- 8 -

established from Atkins's prior testimony.

Third, Atkins points to the "extreme hardship" an assessment of fees would cause him, in light of purported Internal Revenue Service liens and a defense verdict pending against him in a separate unmeritorious case he brought. (Doc. 91 at 11.) The Court takes considerations of hardship very seriously when deciding whether to award fees. Atkins, however, has made his career as a financial investor and pursued this action with privately retained counsel at the helm. If other pending legal judgments leave him unable to withstand an attorneys' fee award here, he will have to provide something more than bare conclusions about his inability to pay. He has not met his burden of showing hardship here. Moreover, difficulty in paying for the harm done by his own fraudulent and extortionate lawsuit carries no equity.

Fourth, while he concedes that he did not prevail on any claims, Atkins argues that he presented at least one novel legal question, namely "whether the loan made to Calypso was converted to Calypso's non-public stock despite the failure of [a merger]." (Doc. 91 at 11.) This question, which was answered by reading the contract the parties signed, is not novel. More importantly, it was not presented by Atkins in good faith. Atkins did not need a court to tell him the loan had converted into stock—multiple documents revealed that to him several years ago, documents Atkins neither questioned nor objected to when he received them. *See* Doc. 70 at 8; Doc. 71, ¶¶ 16-20.

Finally, Atkins contends a fee award "would discourage pursuit of meritorious claims." (Doc. 91 at 11-12.) He provides no support for this claim aside from various conclusory assertions about chilling "meritorious and novel claims," even though his case was neither meritorious nor novel. What a fee award here will discourage is just the opposite: frivolous and fraudulent claims carried out in bad faith. That is part of what fee awards are designed to do, together with compensating litigants harmed by such litigation.

Under section 12-341.01, attorneys' fees should be assessed against Atkins for each tort claim. As those fees were inextricably intertwined with all other fees incurred

in the defense, so reasonable fees on the entire case should be awarded. *See Design Trend Int'l Interiors, Ltd. v. Cathay Enterprises, Inc.*, 103 F. Supp. 3d 1051, 1065 (D. Ariz. 2015). Given the strong and redundant legal bases to assess fees against Atkins on all his claims, all reasonable attorneys' fees for work actually and reasonably done on these claims will be awarded.

### 3. Fee Amount

Atkins contends that the fees sought by Calypso are "exorbitant and unreasonable" under Arizona law. Calypso retained three attorneys and one paralegal to work on this case. The three attorneys billed at $450, $350, and $300 per hour, respectively. The paralegal billed at $195 per hour. (Doc. 85-1 at 3-4.) The Court finds as a fact that those were reasonable rates. In total, Calypso seeks $55,000 in fees and $3,750 in costs (including taxable costs) for expenses incurred prior to its motion for attorney's fees (Doc. 82 at 2), plus additional fees incurred in pursuing the fee motion itself. The fee as a whole is entirely reasonable for this case, protracted by Atkins's fraudulent assertions and his concealment of material evidence against him. The Court finds the claimed fees reasonable, even modest, and rejects all objections to the amount sought. Calypso may submit additional briefing to establish a precise amount in additional fees, and Atkins will have the opportunity to respond.

## III.   ATTORNEY SANCTIONS

Like fees assessed against a party, authority to issue sanctions against counsel may arise from statute. Among others, Title 28, section 1927, United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 applies only to individual attorneys, not to law firms or parties themselves. *See Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 (9th Cir.

2010) (sanctions under section 1927 authorized "only upon counsel"); *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1294 (9th Cir. 2015) ("[Section] 1927 does not permit the award of sanctions against a law firm").

Additionally, the Court's inherent power also encompasses the power to extend sanctions to attorneys "who willfully abuse judicial processes." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766-67 (1980). When invoking the court's inherent power, sanctions against lawyers and litigants alike require "fair notice and an opportunity for a hearing on the record." *Id.* at 767.

Calypso argues that in addition to the fees imposed on Atkins, Atkins's attorney, David Marhoffer, should be sanctioned. Despite originally asking for sanctions under Rule 11, Calypso has since rescinded that claim based on its own failure to comply with the rule's "safe harbor" provision requiring 21 days' notice to opposing counsel. The Rule 11 claim is therefore moot. Beyond this Calypso cites both section 1927 and the inherent powers of the Court as grounds for sanctioning Marhoffer.

**A. Section 1927**

Calypso urges sanctions against Marhoffer, Marhoffer's law firm, and Atkins under section 1927. (Doc. 85 at 5-8.) However, only Marhoffer as an individual attorney can be sanctioned under this provision. *See Sneller*, 606 F.3d at 640.

Despite mixed guidance in previous cases, the Ninth Circuit has recently clarified that under section 1927, a court may sanction an attorney whose actions in litigating only fell to the level of recklessness. *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). While sanctions are often imposed where counsel exhibited recklessness plus something more, courts in practice hesitate to sanction lawyers upon a finding of recklessness alone. *Compare B.K.B.*, 276 F.3d at 1107 (upholding section 1927 sanctions where district court found trial counsel's flouting of evidence rule amounted to "recklessness plus knowledge"), *with Braunstein*, 683 F.3d at 1189 (reversing district court imposition of section 1927 sanctions where trial court

1  quickly dismissed barred claims and opposing party conceded plaintiff "did not file
2  repetitive motions or generate an extraordinary volume of paperwork").

3  There is no doubt Marhoffer should have considered it a red flag when, in
4  November 2015, he received in discovery ample documentation that Atkins knew and
5  acknowledged the nature of his Calypso holdings. Further alarms should have sounded
6  on March 23, 2016, when Calypso deposed Atkins and caught him in a lie over his email
7  exchange with Eden Kim. And by June 7, 2016, when Atkins's 2009 deposition came to
8  light, one can infer Marhoffer knew that Atkins was very likely pursuing a fraudulent
9  action.

10  However, Marhoffer filed the bulk of Atkins's filings in this case prior to March
11  23, 2016. After that point, Marhoffer filed a response to Calypso's motion for summary
12  judgment on June 6, 2016—one day before Calypso's counsel brought the 2009
13  deposition transcript to Marhoffer's attention. Marhoffer filed an affidavit and statement
14  of facts on Atkins's behalf on June 7, the same day the transcript was revealed. (Docs.
15  73, 74.) He then filed an amended declaration on June 8. (Doc. 75.) The only other
16  motions Marhoffer filed were a Motion to Alter or Amend Judgment (Doc. 84), and the
17  briefing in the instant motion. Since filing the response brief on this motion, Marhoffer
18  has withdrawn as counsel of record.

19  Thus, assuming these various revelations were Marhoffer's first notice of Atkins's
20  fraud, it is hard to conclude he proceeded recklessly. The bulk of his filings after March
21  23, 2016, were defensive in nature. After the 2009 deposition came to light, Atkins
22  promptly filed an amended declaration (albeit one insufficiently addressing his
23  contradictory testimony). The only questionable filing produced after March but before
24  Marhoffer's withdrawal was the Motion to Alter or Amend, which was unnecessary and
25  was summarily denied without a response. Marhoffer may have filed this single
26  excessive motion. But even if that amounted to recklessness, Calypso incurred no legal
27  fees in defending it. As for the rest of his actions, Calypso has not produced sufficient
28  evidence to establish Marhoffer acted recklessly. Sanctions under section 1927 against

Atkins's counsel are unwarranted.

### B. Inherent Powers of the Court

Unlike the standard imposed by section 1927, "sanctions imposed under the district court's inherent authority require a bad faith finding." *Braunstein*, 683 F.3d at 1189 (quoting *Lahiri*, 606 F.3d at 1219). This includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994.

Repeating its charges of perjury against Atkins, Calypso insists that "[e]ven if it was not reckless at the outset, counsel's conduct was reckless and in bad faith once it saw the documentation in disclosures and at deposition and then when it saw Plaintiff's testimony was perjured." (Doc. 85 at 8.) But Calypso must offer more than threadbare accusations to establish bad faith. On the record here, the Court cannot conclude Marhoffer litigated this case in bad faith. Sanctions predicated on the Court's inherent powers are not warranted.

IT IS THEREFORE ORDERED that Defendant's Motion for Recovery of Attorneys' Fees and Costs (Doc. 82) is granted as to attorneys' fees against plaintiff Barry M. Atkins in the amount of $58,750, plus such additional fees as may be claimed and awarded.

IT IS FURTHER ORDERED that the motion (Doc. 82) is denied as to sanctions against Plaintiff's counsel.

IT IS FURTHER ORDERED that Calypso may file by March 24, 2017, documentation in support of additional fees requested beyond the documentation supplied with the original motion. Atkins may file a response by March 31, 2017.

Dated this 16th day of March, 2017.

Neil V. Wake
Senior United States District Judge